### AABY v. DYER.

(Circuit Court of Appeals, Second Circuit. June 1, 1921.)

#### No. 224.

**1. Principal and agent ⬤⇒167—Letter held ratification of signing of charter party.**

A letter from one in whose name a vessel was chartered, confirming the acts of the agent or person signing, *held* a ratification of the acts of such person.

**2. Admiralty ⬤⇒117—Answer must be amended within 15 days after filing of apostles.**

Where answer in libel proceeding was based on claim that signing of charter was without authority, libelee could not set up the defense that agent's consent that the steamer should go to another port to complete her loading was a new contract, made without notice to libelee, which discharged him from all liability under the original charter, even if authorized under bond to cover demurrage; the answer not being amended, and no application therefor having been made within 15 days after the filing of the apostles.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Southern District of New York.

Libel in admiralty by E. B. Aaby against Fred M. Dyer. Decree for libelant, and respondent appeals. Affirmed.

Merchant, Olena & Merchant, of New York City (Abel Merchant, Jr., Henry D. Merchant, and Roscoe H. Hupper, all of New York City, of counsel), for appellant.

Haight, Sandford, Smith & Griffin, of New York City (John W. Griffin and Wharton Poor, both of New York City, of counsel), for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. Alexander Cunningham, Charles T. Small, and W. A. Norton were negotiating for a steamer to carry a cargo from New York to England. Not having sufficient financial standing to obtain a charter, they applied to the respondent, F. M. Dyer, a dealer in investment securities, to assist them. Judge Learned Hand has found that he was financially interested in this transaction, and we concur in that conclusion. Dyer himself dictated and handed to the gentlemen before mentioned a letter as follows:

"April 15, 1916.

"Alexander Cunningham, Esq., Charles T. Small, Esq., W. A. Norton, Esq., 45 Broadway, New York City—Gentlemen: This letter will be your authority for using my name as guarantor for any chartered steamer for carrying of freight from New York to Europe.

"Yours truly, F. M. Dyer."

This letter Norton inclosed to George R. Manchester, agent for owners of the Danish steamer Avra, as his authority to sign the charter party in Dyer's name. The liability assumed by Dyer was as large as if he were to be the charterer. The letter was accepted as such authority, and the charter party was signed that day by Manchester as agent for owners and by Norton in Dyer's name.

May 19, 1916, McDonnell & Truda, who had been employed by Norton, representing Dyer, to load the vessel, wrote the following letter to Dyer:

"May 19, 1916.

"Mr. F. M. Dyer, % Messrs. F. M. Dyer & Co., 24 Broad St., New York City—Dear Sir: Confirming conversation had this p. m. between W. A. Norton, Esq., of 45 Broadway, representing Mr. F. M. Dyer, of the firm of F. M. Dyer & Co., 24 Broad street, by his written authority, and McDonnell & Truda, as loading agents, beg to advise we are prepared to receive Norwegian steamer Avra on Monday morning at 7 a. m., at either Pier B or C, Jersey City.

"It is our understanding that you desire us to act as loading brokers and agents for this steamer for one outward voyage from New York to Liverpool; said steamer being now in the port of New York and ready for loading on the 22d day of May, 1916.

"It is our further understanding that we are hereby authorized to collect all freight moneys on this steamer for all cargo she may carry, and to deduct therefrom, before any payment of said money is made to F. M. Dyer, a commission of 5 per cent. on the gross freight list on account of our handling steamer, said commission to cover our charges as loading agents.

"It is further understood that where it is necessary for us to pay brokerage to authorize brokers or freight brokers that said brokerage be paid by us

out of our 5 per cent. commission. In no case are we to pay any brokerage to Messrs. Alfred H. Post & Co.

"We are also instructed by you to secure a berth for this steamer, and also to engage clerks for the tallying and receiving of cargo, and also to employ a first-class stevedore to load cargo, all of which expense is to be paid by us for your account out of freight money collected.

"We are also to use our best endeavors to secure the best possible paying freight, provided that you do not receive sufficient freight from the people who are now booking freight for you, namely, Alfred H. Post & Co.

"We will also use our best endeavors to load this steamer, if possible, to her full cubic and dead weight carrying capacity. However, we do not assume any obligation as to the gross amount of freight to be procured or the date of dispatch of steamer.

"It is further understood that this steamer will leave Pier B or C on or before May 28th, even though she has not completed the loading of her cargo. It may be necessary that the said steamer go into the stream to complete her cargo.

"If the above is satisfactory, kindly confirm.

"Very truly yours,                          McDonnell & Truda,
"PMcD/B                                      Steamship Agents.

"Accepted: W. A. Norton, for F. M. Dyer."

May 22, on Monday, Dyer replied:

"May 22, 1916.

"Messrs. MacDonald & Truda, 5 State Street, New York, N. Y.—Dear Sirs: Referring to your letter of May 19th, would say that the arrangements made between W. A. Norton, my representative, and yourself as loading agents are satisfactory in every way.

"I note that the steamer Avra will be at either Pier B or Pier C, Jersey City, Monday morning at 7 a. m. It is understood that she will leave on or before May 28th, even if she has to go into the stream to complete her cargo.

"All other conditions of your letter are confirmed as accepted by Mr. Norton.

"Yours very truly,                          ·          F. Monroe Dyer."

[1] May 22, to conform to a requirement of the charter that the charterers "guarantee £2,000 demurrage immediately on arrival of the vessel," Dyer signed a bond as principal, with the American Surety Company of New York as surety, for that amount, which bond recited that he had entered into a written charter party for the Avra May 18, 1916. It is true that Dyer says he signed the bond without reading it, but all the same it was delivered to the agent of the owners of the steamer in accordance with the provision of the charter party. We agree with the court below that, if Dyer's letter of April 15, 1916, was insufficient to authorize Norton to sign the charter party in his name, he subsequently ratified what Norton did and made him his representative in relation to the steamer and her cargo throughout. From this time on Dyer took no part in any of the transactions, they being conducted by Norton as his agent and in his name.

The libel alleged that the loading of the cargo was finished at Philadelphia. This was because but a little over one-third of the cargo could be obtained in New York, and the amount subsequently loaded at Philadelphia increased the charterers' bill of lading freight by more than $60,000. The sole defense in the answer was that the charter party had been signed without the respondent's knowledge or authority and that he was under no liability at all to the libelant in the premises. The District Judge entered a decree in favor of the libelant, and his damages and costs were stipulated in the sum of $38,105.84. If the

steamer had not gone to Philadelphia, the damages would have been nearly $100,000.

[2] On the hearing before us the respondent contended that Norton's consent that the steamer should go to Philadelphia to complete her loading was a new contract, made without notice to Dyer, which discharged him from all liability under the original charter, even if authorized, and under the bond to cover demurrage. This defense, if good in law, is certainly most inequitable. However, we need not consider it, because, to avail of it, the answer would have to be amended, and under our rule in admiralty 7 (U. S. Comp. St. 1916, vol. 3, p. 2707), application for such amendment would have to be made within 15 days after filing the apostles, a period long since past.

Decree affirmed.